(C. D. 1870)

R. U. DELAPENHA & CO., INC. v. UNITED STATES

## United States Customs Court, Third Division

(Decided April 12, 1957)

*Strauss & Hedges* (*E. Thomas Honey* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*William J. Vitale*, trial attorney), for the defendant.

Before JOHNSON and DONLON, Judges

DONLON, Judge: The merchandise here is the French product known as Bar-le-Duc. It was described on entry as 25 cases containing jars of red currants in sugar sirup, imported from France.

The collector liquidated the Bar-le-Duc as berries, preserved, not specially provided for, with duty at 14 per centum ad valorem under paragraph 736 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade (T. D. 51802).

Plaintiff's protest, as originally filed, claims that this Bar-le-Duc should be taxed under paragraph 751, as modified by the General Agreement on Tariffs and Trade (T. D. 51802), which provides duty at 10 per centum ad valorem on jellies and marmalades. Thereafter, plaintiff amended its protest to claim classification under the provision for currants in paragraph 742, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade (T. D. 52373), and the President's proclamation of March 1, 1950 (T. D. 52423). That paragraph, as modified, became effective March 9, 1950, and provides for duty at 1 cent per pound on "currants, Zante or other."

The evidence of record includes a small glass jar labeled "Bar-le-Duc." Through the glass, its contents may be observed. This is plaintiff's exhibit 1, and it is said to be representative of this merchandise.

On trial, the parties entered into a stipulation of agreed facts, as follows (R. 3):

MR. HONEY: * * * At this time I offer to stipulate that the merchandise involved herein is manufactured in the Bar-le-Duc section of France and it derives its name from that section. It was made from red currants together with crystallized or refined sugar. The process of manufacture was as follows: The currants were picked in the surrounding territory of Bar-le-Duc and delivered to the place of manufacture where they were stemmed, cleaned, and the seeds removed by hand with the use of a very fine needle. The currants were then immersed in a very light syrup solution of sugar and water and processed by cooking until the material was concentrated to a light degree of soluble solids. The finished product was then packed in a glass container for shipment.

MR. VITALE: After conferring with the customs officials, may it please the court, the Government is willing to so stipulate.

Plaintiff's brief states (p. 1) that its contention here is "that the merchandise is dutiable under the *eo nomine* provision for currants." Nowhere in plaintiff's brief is reference made to the original protest claim, nor is any of plaintiff's argument addressed to that claim. Under the circumstances, the claim not having been prosecuted, we deem that the original protest claim, namely, that this product should be classified as a jam or jelly, has been abandoned. Indeed, plaintiff has prosecuted here only its claim in the protest amendment, as to currants. It is that claim, therefore, which we now proceed to consider.

Before doing so, it may be noted that plaintiff, in an earlier case, litigated the issue it has here abandoned. *R. U. Delapenha & Co., Inc.* v. *United States*, 36 Cust. Ct. 345, Abstract 59725. Decision there turned on section 315 of the Tariff Act of 1930, as amended by section 6 of the Customs Administrative Act of 1938. Section 315 provides a grace period of 30 days after publication before effect is given to an administrative ruling which imposes duty at a higher rate than the rate of duty theretofore applicable under an established and uniform practice. On the record before us in that case, we held that the higher duty rate assessed did not apply to the merchandise of that litigation, because the 30-day grace period had not elapsed, and so the administrative ruling could not have become effective at the time the merchandise was entered.

In this case, section 315 has no application.

We are of opinion that plaintiff has not overcome, by its proofs, the presumption of correctness which attaches to the collector's liquidation. We do not decide whether the collector's classification is or is not correct. It is not necessary for us to do so. We rule solely on the litigated issue and hold that this product is not entitled to classification as "currants, Zante or other."

After longstanding administrative practice of classifying Bar-le-Duc as jams or jellies, defendant, in 1952, changed this practice and, by new administrative ruling, directed collectors to classify Bar-le-Duc as berries, preserved. That is the classification which plaintiff's protest challenges.

The term "currants" is not free of ambiguity. It may connote either, or both, of two dissimilar articles of growth and commerce. It is necessary to ascertain what Congress intended to comprehend within the classification "currants, Zante or other," because it is congressional intention that will determine the issue. This was succinctly stated by our appeals court recently in *United States* v. *Mercantil Distribuidora, S. A., Joseph H. Brown*, 43 C. C. P. A. (Customs) 111, C. A. D. 617, at page 117, as follows:

If, however, the word in question has more than one common meaning, either of which may suitably fit the context, then the wording is ambiguous, and in the

case of tariff acts resort may be had to the legislative history to determine the intent of Congress, *United States* v. *Jos. Riedel Glass Works, Inc.*, 32 C. C. P. A. (Customs) 201, C. A. D. 307, or in the case of trade agreements, to the trade agreement history to determine the intent of the negotiators, *United States* v. *Weigert-Dagen, et al.*, 39 C. C. P. A. (Customs) 58, 64, C. A. D. 464.

While, as will be noted later, it is our opinion that one of the common meanings of "currants * * * other" in paragraph 742 does not "suitably fit the context," we proceed to consideration of congressional intent.

Webster's New International Dictionary, second edition, defines "currant" as:

> **currant**, *n.* [AF. raisins de *Corauntz*, F. raisins de *Corinthe*, raisins of Corinth, currants (in sense 1), fr. *Corinth* in Greece, whence, probably, the raisins were first imported, the *Ribes* fruit receiving the name from its resemblance to these raisins. * * *.] **1.** A small seedless raisin, grown chiefly in the Levant, used extensively in cookery and confectionery. **2.** The acid berry of several species of *Ribes.* * * * These are eaten as dessert fruits, but their chief use is for jellies and jam. * * *.

In ascertaining congressional intention, it is appropriate to note the context in which the litigated provision occurs. Paragraph 742 of the Tariff Act of 1930 reads as follows:

> PAR. 742. Grapes in bulk, crates, barrels or other packages, 25 cents per cubic foot of such bulk or the capacity of the packages, according as imported; raisins, 2 cents per pound; other dried grapes, 2½ cents per pound; currants, Zante or other, 2 cents per pound.

The provision for berries is found elsewhere, in paragraph 736.

The provision for currants in paragraph 742 is not new in the tariff act. Currants have been specifically provided for as far back as the Tariff Act of 1790. From the 1790 act, to and including the Tariff Act of 1861, currants were *eo nomine* provided for simply as currants.

In the Tariff Act of 1870, there was a change in wording, and this continued through the Tariff Act of 1872. In those acts, the dutiable provision read "Zante or other currants."

In the Tariff Act of 1883, the provision was as it now is, that is, "currants, Zante or other."

In the Tariff Act of 1890, "currants, Zante or other," were put on the free list. In the Tariff Act of 1894, they were taken off the free list and made dutiable under a common provision for "Plums, prunes, figs, raisins, and other dried grapes, including Zante currants." At the same time, the provision for free entry of "currants, Zante or other," was deleted.

In the Tariff Act of 1897, the provision of the Tariff Act of 1883 was restored, and, in this form, it has been continued in all succeeding acts. The present provision is paragraph 742, quoted, *supra.*

In the Summary of Tariff Information, 1929, schedule 7, entitled "AGRICULTURAL PRODUCTS AND PROVISIONS," compiled by the United

States Tariff Commission and printed for the use of the Committee on Ways and Means, House of Representatives, there are two sections of the summary in which reference is made to currants. One such reference is under paragraph 736, and this reads as follows (pp. 1236, 1237):

#### CURRANTS

Currants produced in the United States are used largely in the making of jellies and preserves. One-half of the total domestic commercial pack of pure fruit jelly is made from this berry.

The domestic industry has steadily declined since 1900. The largest and most important commercial sections are in the Hudson River Valley and near Lake Ontario in New York. Production in 1919 amounted to about 7,500,000 quarts. See section on gooseberries for quarantine regulations.

Other products discussed in the summary, under the title of paragraph 736, include strawberries, blackberries, raspberries, loganberries, cranberries, gooseberries, and blueberries, in addition to the quoted matter as to currants.

The other reference to currants in the 1929 summary is found under the title of paragraph 742. It reads as follows (pp. 1266, 1267):

#### CURRANTS, ZANTE OR OTHER

**Description and uses.**—The Zante, or currants of commerce, are dried grapes of certain European varieties. Currants are used in many ways in cooking and baking.

**Production.**—Currants have not been produced commercially in the United States until very recently. Since 1920 a small acreage has been planted in California to Panariti grapes, the choicest variety of the currant grapes. Comparatively small quantities have been marketed from this acreage.

Over 90 per cent of the world's currant exports come from Greece, the production since 1921 having averaged about 144,000 tons annually. Australia has produced from 10,000 to 15,000 tons and South Africa about 100 tons annually during that period.

**Imports.**—Greece supplies practically all of the currants imported into the United States. The recent falling off in imports is ascribable in large part to the introduction of seedless raisins and to improved methods of preparing seeded raisins. Both types have been substituted for currants in many uses. Imports of currants, Zante, or other since 1918 have been as follows:

[Table not quoted.]

**Exports.**—There are no exports of currants.

**Prices.**—Average wholesale prices of currants at New York in 1926–27 and 1927–28, November to October, inclusive, were as follows:

[Table not quoted.]

This is the tariff information with respect to "currants" which Congress had before it when the Tariff Act of 1930 was being drafted and enacted.

To like effect, the following excerpts are cited from the Summary of Tariff Information, 1921, furnished to Congress preliminary to its deliberations on the Tariff Act of 1922:

### CURRANTS.

*Description and uses.*—Currants are used principally in making jelly and small quantities are employed in making conserves. Spiced currants are used for pie filling, etc. Few are consumed fresh because of their sharp acidity. Because of the relation which currant and gooseberry plants of all varieties bear to the white-pine blister rust, stringent quarantine regulations limit the regions for growing currants or gooseberries. In the absence of these plants the disease is not perpetuated. (P. 716.)

\*     \*     \*     \*     \*     \*     \*

### DRIED CURRANTS, ZANTE OR OTHER.

*Description and uses.*—The Zante or currants of commerce are in fact the dried product of certain varieties of European grapes, domestic production of which has been negligible. Recent experiments indicate that this type of grape can be grown commercially in California. The dried currant is used for culinary purposes. (P. 726.)

\*     \*     \*     \*     \*     \*     \*

### GENERAL NOTES ON PARAGRAPH.

*Important changes in classification.*—Fresh grapes have been combined with dried grapes, raisins, and dried currants.

The provision here for dried currants covers only dried currant grapes of the Zante and other varieties, which are similar in nature to raisins. *Garden currants are a different fruit, being more nearly related to berries.* Trade in garden currants is unimportant. Such currants, in the absence of specific provision therefor, have been held to come within the provision for berries in their natural condition. (P. 726.) [Italics supplied.]

There is no claim that this product is, or is made from, Zante currants. The claim is, obviously, that this product is made from "currants * * * other" within the meaning of paragraph 742. The stipulation is that it is made from red currants and, while not stipulated, it seems reasonable to conclude that these are fruit of the shrub currant, or *Ribes*, that is, garden currants.

There is early litigation construing the *eo nomine* language as to currants. It will be recalled that, in the Tariff Act of 1894, "currants, Zante or other," were taken off the free list, and "Zante currants" were made dutiable by specific provision as a part of the paragraph classifying plums, prunes, figs, raisins, and other dried grapes, "including Zante currants."

In *Hills Bros. Co.* v. *United States,* 99 Fed. Rep. 264, the Circuit Court of Appeals, Second Circuit, reviewed the meaning of the tariff language "currants * * * other." There, the merchandise was dried currants from the Levantine, but not from the Island of Zante. With so much of the court's opinion as was concerned with

dried currants marketed under various names, we are not here concerned. What does concern us is the careful consideration the court gave to the two types of fruit that are included under the dictionary definition of "currant" and its opinion that fruit of the shrub currant was not comprehended under the tariff term currants "other than Zante."

At page 267 of the reported case, the court said:

What, then, are currants "other than Zante"? The records shows that the only dried foreign currants known to trade and commerce (and paragraph 217 of the act of 1894 manifestly deals with dried fruits) are the fruits of the peculiar variety of the vitis vinifera already described, which reaches perfection only in the islands of the Grecian archipelago, and on the neighboring mainland of Greece and Asia Minor. *The fruit of the shrub currant is not known in this form.* Many names are given to these currants which we may comprehensively call "Levantine." Vostizza, Calamata, Patras, Amalia, Ithaca, Pyrgos, Provincial, Gulph, Cephalonia, are samples of the 30 or more names by which they are described in trade circulars, and under which wholesale dealers in the article are accustomed to order them. These different names, it is apparent, are mainly indicative of the place from which the fruit comes, and the evidence shows that the differences are more than nominal. It is testified that the fruit grown in different localities possesses different characteristics, and some of the witnesses before the board picked out samples which they identified as Vostizza, Zante, Provincial, etc., and pointed out the differences between the fruit. Inasmuch as congress has recognized the existence in trade and commerce of currants other than Zante, we must assume, in view of testimony that discloses the existence of these Vostizza, Calamata, Provincial, and other Levantine currants, and denies the existence of any other dried currants than the Levantine, that congress, when it used the phrase "currants, Zante or other," meant to differentiate the Zante currant from the Vostizza, the Calamata, the Provincial, and the other varieties of Levantine currants. That congress did make just this distinction in the Revised Statutes, and in 1883, 1890, and 1897, is proved by its continued use of the phrase, "currants, Zante or other." * * * [Italics supplied.]

As noted earlier, paragraph 742 is similar to the provision of the Tariff Act of 1897, the paragraph above mentioned by the Court of Appeals in the *Hills* case. Use of the phrase "currants, Zante or other," in identical language has been continued by Congress in all subsequent acts and always as a part of the provision which "manifestly deals with dried fruits," as the court pointed out in the *Hills* case, *supra*.

The protest is overruled. Judgment will be entered for defendant.